[11, 12]

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

_____
                                              :
SAVINO MAZZILLI,                              :
                                              :
            Plaintiff,                        :        Civil Action No. 05-4976 (FLW)
                                              :
      v.                                      :
                                              :
MICHAEL J. ASTRUE,                            :        **MEMORANDUM OPINION**
COMMISSIONER OF SOCIAL                        :
SECURITY,                                     :
                                              :
            Defendant.                        :
                                              :
_____:

**WOLFSON, United States District Judge**

Plaintiff, Savino Mazzilli, appeals from the final decision of Commissioner of Social Security ("the Commissioner"), Michael J. Astrue[1], denying him disability benefits under the Social Security Act. The Court has jurisdiction to hear this matter pursuant to 42 U.S.C. § 405(g).

Plaintiff contends that the record substantiates his claims and requires a conclusion that he is disabled and entitled to benefits. Specifically, Plaintiff maintains that the Administrative Law Judge, Dean W. Determan ("the ALJ"), and the Appeals Council erred by (1) failing to

---

[1]The Court notes that Michael J. Astrue became the Commissioner of Social Security on February 2, 2007, thus he is substituted for the former Commissioner, Jo Anne B. Barnhart, as the Defendant in this suit.

1

consider Plaintiff's case as a "borderline" case for application of the Commissioner's Vocational Rules; (2) classifying Plaintiff as a younger individual; and (3) failing to properly consider Plaintiff's Subjective Complaints of Pain and Limitation.  Alternatively, Plaintiff contends that a remand is necessary for further administrative proceedings including a supplemental administrative hearing. For the reasons stated below, this matter is remanded for further proceedings consistent with my opinion.

I.      **BACKGROUND**

Plaintiff, Savino Mazzilli, was born on June 25, 1955.  Administrative Record ("AR.") 71.  Mazzilli, who was 49 years-old at the time the ALJ issued his decision, and 50 at the time the Appeals Council issued its decision, has a high school diploma including one year of vocational school and completed one year of college.  AR. 95.   Plaintiff's past work experience includes owning a typewriter repair business between 1979 and 1990 and working as an electrician between 1990 and 2002.  Id. 98.  Plaintiff alleges that he has been disabled since October 11, 2002, due to a herniated disc, radiculopathy, damaged nerves and weakness in his legs.

**A.  Procedural History**

On March 19, 2003, Plaintiff filed an application for Social Security Disability benefits. AR. 71-77.  The application was denied initially and upon reconsideration.  AR. 46.  Following the denial of his application, Plaintiff requested a hearing before an ALJ.  AR. 59.  This hearing occurred on November 16, 2004, before ALJ Determan.  AR. 28-43.  Plaintiff appeared and

offered testimony at the hearing where he was represented by Frank Kehoe, Esq.  Id.
Subsequently, on December 21, 2004, ALJ Determan issued a decision in which he determined
that Plaintiff was not disabled under the Social Security Act.  Id. at 17, 28.

Thereafter, on March 28, 2005, the Appeals Council granted Plaintiff's request for review
of the ALJ's decision. AR. 245-248.  Specifically, in a Notice dated March 28, 2005, the Appeals
Council explained that the ALJ's "decision reflects that you have the residual functional capacity
for the full range of light work, but the decision. . .also restricts you to only 2 hours of
standing/walking, which is not consistent with the full range of light work. . .The Appeals
Council is prepared to adopt the specific limitations found in the decision, of no lifting over 20
pounds, no standing/walking over 2 hours a day, and sitting for up to six hours a day. This allows
for the performance of at least the full range of sedentary work. . . . Absent new and material
evidence and/or pertinent legal arguments, the Appeals Council is prepared to find that you are
not disabled." AR. 246.  The Appeals Council granted Plaintiff 30 days within which he could
present evidence relating to his disability prior to December 21, 2004.  AR. 5 & 8.  On June 27,
2005, the Appeals Council issued its final decision finding that Plaintiff was not entitled to
disability benefits.  This decision became the final decision of the Commissioner.  AR. 14-15.
The instant appeal followed.

**B. Plaintiff's Testimony**

At the administrative hearing, Plaintiff testified that he lives with his wife and two of his
three sons, ages 10 and 17.  AR 41.  In response to inquiries by the ALJ, Plaintiff explained that
since October 2002, he has been disabled because of low back pain, numbness in his legs and

fatigue related to Hepatitis C, as well as anxiety and depression.  AR. 32, 34-36, 40.  Plaintiff

testified that he attempted to return to work in December 2003, but, because of the

"combination" of his ailments, he had to stop working in February 2004.  In addition, Plaintiff

stated that his current medications include Oxycodone and Ultracet for back pain, Ambien for

insomnia, Alprazolam for anxiety and Lexapro for depression. Moreover, Plaintiff explained that

his medication causes significant adverse affects including drowsiness, dizziness, upset stomach,

frequent urination and a "bathroom problem."  AR. 38-40.  Indeed, Plaintiff testified that due to

his ailments and the side effects of his medication he has become a hermit and has entirely

stopped socializing.  AR. 40.

In addition, on his disability application, Plaintiff testified that on a typical day he

showers, watches the news, makes his bed, eats, watches television, goes to the store with his

wife, and naps.  AR. 107.  Moreover, Plaintiff explained that numerous activities such as

working, playing ball with his children and riding his motorcycles are no longer possible.  Id.

Further, Plaintiff explained that he has to rest often when cleaning the house, that he can no

longer mow the lawn or take care of the car, the he can only walk about 300 feet before he has to

stop and rest, and that he experiences pain when bathing.  AR 107-111.  Finally, Plaintiff stated

that he is generally "unable to do many of the things I did" and that he was depressed and has had

suicidal thoughts.  AR 110, 116.


### C.  Medical Evidence

On November 13, 2002 , Plaintiff saw Dr. Alex Levin, a pain specialist, at the Brunswick

Medical Center.  AR. 169.  Plaintiff reported improvements in his right lower back for which Dr.

Levin had been treating him since September; however, Plaintiff also reported increased

discomfort in his left lower back and his right leg.  Id.  Dr. Levin noted Plaintiff's "good and

lasting improvement with perispinal injections" and that following such a treatment, Plaintiff's

lower back pain was "significantly better."  AR. 170.

On January 2, 2003, Plaintiff was seen by Dr. Gerardo Goldberger, his treating physician.

AR. 134.  Dr. Goldberger noted that Plaintiff had been seen extensively in the past and had

received a diagnosis of herniated nucleus pulposus at L4-L5.  Moreover, the doctor stated that an

MRI taken December 12, 2002, revealed a pattern of spinal stenosis at L4-L5 and that an EMG

revealed a bilateral radiculopathy.  Id.  Although Dr. Goldberger recommended surgery to treat

Plaintiff's ailments, Plaintiff was apprehensive about having a surgical procedure and the doctor

alternatively recommended that Plaintiff continue with epidural injections which had provided

significant relief in the past.  Id.  At that time, Dr. Goldberger advised that Plaintiff was unable to

work pending injections and a follow-up examination in February 2003.  AR. 135.

Between January 8, 2003 and April 24, 2003, Plaintiff saw Dr. Levin for follow-up

treatment and injections. On January 8, 2003, Dr. Levin recommended bilateral L5 neurolysis

because Plaintiff complained of significant pain radiating to both legs.  On January 23, February

6, and February 27, 2003, Dr. Levin performed right L5 neurolysis and administered epidural

injections to Plaintiff.  On March 20, April 10 and April 24, 2003, Dr. Levin performed left L5

neurolysis and administered epidural injections to Plaintiff.  Following each treatment, Plaintiff

reported that he was more comfortable.  AR. 151, 154, 157, 161, 163, 166.

Thereafter, on May 9, 2003, the New Jersey Department of Labor, Division of Disability

Determination Services, wrote to Dr. Goldberger seeking help in determining Mazzilli's medical

condition for disability purposes.  AR. 131.  On May 20, 2003, Dr. Goldberger reported that Plaintiff suffered from lumbar disc displacement, spinal stenosis and lumbosacral neuritis.  AR. 133. Moreover, Dr. Goldberger noted that Plaintiff could lift and carry up to 30 pounds and that there were no limitations on Plaintiff's ability to stand, walk, sit, push or pull.  Id.

On August 1, 2003, Dr. Kahng, a consultative physician for the Division of Disability Determination, examined Plaintiff at the request of the state agency.  AR. 226.  Plaintiff explained that his chief complaint was chronic lower back pain radiating to both extremities especially on the right side.  Id. Moreover, Plaintiff stated that although he had been suffering from these ailments for three years, they were progressively getting worse. In addition, Plaintiff reported numbness in the first three fingers of his right hand and low self-control of his bladder and bowel function.  Id. Upon examination, Dr. Kahng noted that Plaintiff exhibited a slow stride but maintained a normal gait.  AR. 227.  Moreover, Dr. Kahng found that Plaintiff had some difficulty assuming the supine to sitting position.  Id.  In addition, Dr. Kahng noted that Plaintiff's cervical spine and upper extremities exhibited a functional range of motion without any muscle atrophy in either upper extremity and found that Plaintiff's range of motion of the lower extremity was well-preserved.  Id.  Following the examination, Dr. Kahng ruled out lumbosacral radiculopathy and carpal tunnel syndrome and recommended electrodiagnostic study to evaluate his assessment. AR. 227-228. An MRI taken on August 6, 2003, revealed moderate dextroscoliosis of the lumbar spine and minimal degenerative changes of the sacroiliac joints. AR. 231.

Thereafter, on August 29, 2003, Dr. Francisco Miranda, a non-examining, non-treating physician reviewed the evidence of record and assessed Plaintiff's residual functional capacity

("RFC").  Dr. Miranda assessed that Plaintiff could occasionally lift and carry up to 20 pounds;

frequently lift and carry up to 10 pounds; stand and/or walk up to six hours in an 8 hour workday;

sit for about six hours in an 8 hour workday; and that Plaintiff was not limited in his abilities to

push or pull.

## II.    DISCUSSION

### A.  Standard of Review

On a review of a final decision of the Commissioner of the Social Security

Administration, a district court "shall have power to enter, upon the pleadings and transcript of

the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of

Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g); see

also Matthews v. Apfel, 239 F.3d 589, 592 (3d Cir. 2001).  The Commissioner's decisions as to

questions of fact are conclusive upon a reviewing court if supported by "substantial evidence in

the record." 42 U.S.C. § 405(g); Knepp v. Apfel, 204 F.3d 78, 83 (3d Cir. 2000).  While the court

must scrutinize the entire record to determine whether the Commissioner's findings are

supported by such evidence, Gober v. Matthews, 574 F.2d 772, 776 (3d Cir. 1978), the standard

is "highly deferential." Jones v. Barnhart, 364 F.3d 501, 503 (3d Cir. 2004).  Indeed, "substantial

evidence" is defined as "more than a mere scintilla," but less than a preponderance.  McCrea v.

Comm'r of Soc. Sec., 370 F.3d 357, 360 (3d Cir. 2004).  "It means such relevant evidence as a

reasonable mind might accept as adequate." Plummer v. Apfel, 186 F.3d 422, 427 (3d Cir. 1999).

A reviewing court is not "empowered to weigh the evidence or substitute its conclusions for that

of the factfinder." Williams v. Sullivan, 970 F.3d 1178, 1182 (3d Cir. 1992).  Accordingly, even

if there is contrary evidence in the record that would justify the opposite conclusion, the Commissioner's decision will be upheld if it is supported by the evidence.  See Simmonds v. Heckler, 807 F.2d 54, 58 (3d Cir. 1986).

### B.  Standard for Entitlement of Benefits

Disability insurance benefits may not be paid under the Social Security Act unless Plaintiff first meets the statutory insured status requirements.  See 42 U.S.C. § 423(c). Plaintiff must also demonstrate the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. § 423(d)(1)(A); see Plummer, 186 F.3d at 427.  An individual is not disabled unless "his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423 (d)(2)(A).

The Social Security Act establishes a five-step sequential process for an ALJ's evaluation of whether a person is disabled.  See 20 C.F.R. § 404.1520.  First, the ALJ determines whether the claimant has shown that he is not currently engaged in "substantial gainful activity." 20 C.F.R. § 404.1520(a); see Bowen v. Yuckert, 482 U.S. 137, 146-47 n.5 (1987).  A claimant currently engaged in substantial gainful activity is automatically denied disability benefits.  See 20 C.F.R. § 404.1520(b); see also Bowen, 482 U.S. at 140.  Second, the ALJ determines whether the claimant has demonstrated a "severe impairment" or "combination of impairments" that

8

significantly limits his physical or mental ability to do basic work activities.  20 C.F.R. § 404.1520(c); see Bowen, 482 U.S. at 146-7 n.5.  Basic work activities relate to "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 404.1521(b).  These activities include physical functions such as "walking, standing, sitting, lifting, pushing, pulling, reaching, carrying or handling." Id.  A claimant who does not have a severe impairment is not disabled.  20 C.F.R. § 404.1520(c); see Plummer, 186 F.3d at 428.  Third, if the impairment is found to be severe, the ALJ determines whether the impairment meets or is equal to the impairments listed in 20 C.F.R. Pt. 404, Subpt. P., App. 1 (the "Impairment List").  20 C.F.R. § 404.1520(a)(4)(iii).  If the claimant demonstrates that his impairments are equal in severity to or meet those on the Impairment List, the claimant has satisfied his burden of proof and is automatically entitled to benefits.  See 20 C.F.R. § 404.1520(d); see also Bowen, 482 U.S. at 146-47 n.5.  If the claimant is not conclusively disabled under the criteria set forth in the Impairment List, step three is not satisfied, and the claimant must prove at step four whether he retains the residual functional capacity to perform his past relevant work.  20 C.F.R. § 404.1520(d); Bowen, 482 U.S. at 141.  If the claimant is able to perform his previous work, the claimant is determined not to be disabled. 20 C.F.R. §§ 404.1520(e), 416.920(e); Bowen, 482 U.S. at 141-42.  The claimant bears the burden of demonstrating an inability to return to the past relevant work.  Plummer, 186 F.3d at 428.  Finally, if it is determined that the claimant is no longer able to perform his previous work, the burden of production then shifts to the Commissioner to show, at step five, that the "claimant is able to perform work available in the national economy."  Bowen, 482 U.S. at 146-47 n.5; Plummer, 186 F.3d at 428.  This step requires the ALJ to consider the claimant's residual functional capacity, age, education, and past work experience.  20 C.F.R. § 404.1520(f).  The

ALJ must analyze the cumulative effect of all the claimant's impairments in determining whether the claimant is capable of performing work and not disabled.  Id.

## C.  Decision and findings of the ALJ and the Appeals Council

In the instant matter, ALJ Determan originally found that although the Plaintiff could not perform his past relevant work because it "require[d] physical exertion beyond his present residual functional capacity," Plaintiff retained the residual functional capacity to perform light work and found Plaintiff not disabled. After careful consideration of the record, the ALJ made the following findings:

1.   The claimant meets the non-disability requirements for a Period of Disability and Disability Insurance Benefits set forth in Section 216(I) of the Social Security Act and is insured for benefits through the date of this decision.

2.   The claimant has not engaged in substantial gainful activity since October 11, 2002.

3.   The claimant has an orthopedic disorder involving the back and legs, that are "severe" based on the requirements in the Regulations. 20 C.F.R. § 404.1520(c).

4.   These medically determinable impairments do not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4.

5.   The undersigned finds the claimant's allegations regarding his limitations are not totally credible for the reasons set forth in the body of the decision.

6.   The claimant has the residual functional capacity to perform the exertional demands of light work.

7.   The claimant is unable to perform any of his past relevant work . 20 C.F.R. § 404.1565.

8.   The claimant is a "younger individual between the ages of 45 and 49."20 C.F.R. § 404.1563.

10

9.      The claimant has one year of college education. 20 C.F.R. § 404.1564.

10.     The claimant has the residual functional capacity to perform a significant range of light work. 20 C.F.R. § 404.1567.

11.     Based on an exertion capacity for light work, and the claimant's age, education and work experience, a finding of "not disabled" is directed by Medical-Vocational Rules 20.20 to 202.22 regardless of skill.

12.     The claimant was not under a "disability," as defined in the Social Security Act, at any time through the date of this decision.  20 C.F.R. § 404.1520(g).

Thereafter, Plaintiff filed an appeal and the Appeals Council granted Plaintiff's request for review of the ALJ's decision. AR. 245-248.  Specifically, in a Notice dated March 28, 2005, the Appeals Council explained that the ALJ's "decision reflects that you have the residual functional capacity for the full range of light work, but the decision. . .also restricts you to only 2 hours of standing/walking, which is not consistent with the full range of light work. . .The Appeals Council is prepared to adopt the specific limitations found in the decision, of no lifting over 20 pounds, no standing/walking over 2 hours a day, and sitting for up to six hours a day. This allows for the performance of at least the full range of sedentary work. . . . Absent new and material evidence and/or pertinent legal arguments, the Appeals Council is prepared to find that you are not disabled."  AR. 246.  The Appeals Council granted Plaintiff a period of 30 days within which Plaintiff could present evidence relating to his disability.  AR. 5 & 8.  On June 27, 2005, the Appeals Council issued its final decision finding that Plaintiff was not entitled to disability benefits.  This decision became the final decision of the Commissioner.  AR. 14-15.

**D.  Plaintiff's arguments on appeal**

On appeal, Plaintiff contends (1) that ALJ Determan and the Appeals council failed to

11

consider whether Plaintiff presented a "borderline" situation because of his age; (2) that the Appeals Council erred by considering Plaintiff a "younger individual"; and (3) that the Appeals Council did not properly evaluate Plaintiff's credibility including his subjective complaints of pain.  For these reasons, Plaintiff asserts that this Court should reverse the Commissioner's decision with remand for calculation of benefits; or, in the alternative, find that Plaintiff was disabled as of June 25, 2005, and remand for consideration of the period from October 2002 to June 24, 2005; or, in the alternative vacate the Commissioner's decision and remand the action. For the reasons stated below, I will remand this action for further proceedings consistent with my opinion.

1. **Whether ALJ Determan and the Appeals Council erred by failing to consider whether Plaintiff presented a "borderline" situation because of his age?**

Plaintiff contends that because he was born on June 25, 1955, and therefore almost 49 ½ at the time of the ALJ's decision on December 21, 2004, both the ALJ and Appeals Council erred by failing to consider whether he presented a borderline situation.  Defendant, on the other hand, argues that even if Plaintiff did present a borderline situation, the use of the higher age category is not automatic.  Indeed, Defendant argues that because Plaintiff bears the burden of demonstrating additional vocational adversities before the next higher age category can be applied, absent such a showing, an ALJ need not explain his use of the claimant's chronological age.  Thus, Defendant argues, in the instant matter, there is no basis for application of the higher age category.  The Court does not agree.

Although the Social Security Administration will consider a claimant's age as a

12

vocational factor, pursuant to 20 C.F.R. § 404.1563(a), the SSA will not apply these age categories mechanically in a borderline situation.  20 C.F.R. § 404.1563; see also Heckler v. Campbell, 461 U.S. 458, 462 (1983); Lucas v. Barnhart, 184 Fed. Appx. 204, 206-207 (3d Cir. 2006).  "On their face, the Grids make bright-line distinctions by age, but the SSA's regulation, 20 C.F.R. § 404.1563(b), promises that where applicants are "within a few days to a few months of reaching an older age category, and using the older age category would result in a determination or decision that [they] are disabled, [SSA] will consider whether to use the older age category after evaluating the overall impact of all the factors of [the] case.'. . .The relevant question is whether the individual's age would allow him or her to adapt to a new job." Lucas, 184 Fed. Appx. At 206.  Indeed, in the Hearings, Appeal and Litigation Law Manual ("HALLEX"), the Social Security Administration established a two-part test to identify borderline age situations.  First, the SSA will determine whether claimant's age is within a few days or a few months of a higher age category.  Next, the SSA will determine whether using the higher age category would result in a decision of "disabled" instead of "not disabled."  If the answer to one or both is no, a borderline age situation does not exist or would not affect the outcome.  However, if the answer is yes, a borderline age situation exists and the adjudicator must decide whether to use the higher age or claimant's chronological age. HALLEX 5-302 (A)); see also, e.g., Metaxotos v. Barnhart, 2005 WL 2899851, at * 7-8 (S.D.N.Y. November 3, 2005).

In the instant matter, neither the ALJ nor the Appeals Council addressed whether Plaintiff's situation presented a borderline situation nor did they address whether the use of a higher age category would result in a decision of "disabled."  Indeed, although there is no exact formula to determine whether a claimant qualifies for "borderline" age consideration, the District

Court for Maine has held that eight and a half months was "too many months shy of the next higher age category to qualify."  <u>Swan v. Barnhart</u>, 2004 WL 1529270, at *9 (D. Me. April 30, 2004).  However, the Western District of Tennessee has determined that the borderline range falls "somewhere around six months from the older age category."  <u>Pickard v. Commissioner of Soc. Sec.</u>, 224 F.Supp. 2d 1161, 1168-69 (W. D. Tenn. 2002).  Here, neither the ALJ nor the Appeals Council considered whether Plaintiff even presented a "borderline" situation.  Because Plaintiff was 49 ½ at the time of the ALJ's decision, and over 50 at the time of the Appeals Council's decision, this Court will remand this matter for further proceedings to determine whether Plaintiff did, indeed, present a borderline situation and, if so, whether that would have an impact on the determination of disabilities.

In light of these findings, the Court need not consider Plaintiff's additional arguments and the Court remands this matter to the Commissioner for additional proceedings consistent with this opinion.[2]

Date: March 27, 2007                            /s/ Freda L. Wolfson
                                                The Honorable Freda L. Wolfson
                                                United States District Judge

---

[2]In addition, the Court notes that on February 8, 2007, Plaintiff filed a Motion to Admit attorney Christopher J. Bowes, Esq., Pro Hac Vice.  This Motion is unopposed and the Court will grant this motion in its entirety.

14